UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NAIL A. HARRY,

            Plaintiff,

v.                            Case No:  2:12-cv-643-Ftm-29UAM

A. WAGNER, J. LICATA, L.
SEVERSON and T. REID,

            Defendants.

_____/

## OPINION AND ORDER

This matter comes before the Court on the following:

> The Motion to Dismiss Plaintiff's Amended
> Complaint filed by Defendants James Licata,
> Angela Wagner, and Lars Severson (Doc. 41,
> filed December 19, 2013); and

> Plaintiff Nail A. Harry's Response in
> Opposition to Defendant's Motion to Dismiss
> (Doc. 43, filed January 24, 2014);

Plaintiff Nail A. Harry ("Plaintiff"), proceeding *pro se*, initiated this action as a prisoner at the Lake Correctional Institution in Clermont, Florida by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1, filed December 3, 2012). Upon the defendants' motion, Plaintiff's original complaint was dismissed for failure to state a claim upon which relief could be granted (Doc. 34). Plaintiff was granted leave to amend, and his amended complaint is presently before the Court (Doc. 38).

In his amended complaint, Plaintiff sues Defendants Property Room Sergeant Angela Wagner, Assistant Warden Lars Severson, and

Head of Classification James Licata (collectively, "Defendants") based upon these defendants' alleged interference with his medical treatment and their obstruction of the grievance process.

Defendants seek dismissal of the amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 41 at 1). Specifically, Defendants argue that: (1) Plaintiff's claims are based upon the denial of his grievances and are insufficient to state claims under § 1983; (2) Plaintiff has not alleged that he suffered from a sufficiently serious medical need; (3) Defendants are entitled to qualified immunity; and (4) Defendants are immune from suit for Plaintiff's emotional injuries absent a showing of physical injury (Doc. 41 at 3-8). For the reasons set forth in this Opinion and Order, Defendants' Motion is **GRANTED.**

## I.   Complaint[1]

The facts, as alleged by Plaintiff, are as follows:

In June of 2011, while an inmate at the Dade Correctional Institution, Plaintiff was prescribed a pair of Dr. Comfort

---

[1] All facts are taken from Plaintiff's amended complaint and the attachments to the original complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal[.]"). If there is a conflict between the complaint and the supporting documents, the information contained in the supporting documents controls. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

orthopedic boots and a heel lift because one of his legs is shorter than the other (Doc. 38 at ¶ 1).

In May of 2012, Plaintiff was transferred to Charlotte Correctional Institution for "crisis stabilization care for mental health issues." (Doc. 38 at ¶ 2).  On July 6, 2012, Plaintiff requested the return of his Dr. Comfort boots, which had been put into a paper bag and placed into the property room by Defendant Property Room Sergeant Wagner. Id. at 6.  Plaintiff was informed by Property Officer Caberlero, who is not a defendant in this action, that Plaintiff's medical boots were not allowed at Charlotte Correctional Institution. Id. at ¶ 4.  Specifically, Caberlero told Plaintiff that she had been advised by Colonel Snider, who is not a defendant in this action, that inmates at Charlotte Correctional Institution were not allowed to possess Dr. Comfort brand orthopedic boots (Doc. 1-1 at 11).  Defendant Wagner was present when Plaintiff requested the return of his boots and directed Caberlero to withhold Plaintiff's boots even though she saw that Plaintiff had a medical pass (Doc. 28 at ¶ 4).

On or about July 11, 2012, Plaintiff filed an emergency grievance (#1207-510-041) in which he requested the return of his boots (Doc. 38 at ¶ 4).  The response to the grievance stated: "Your medical record shows that you were evaluated at the prosthetics lab and you have an appointment scheduled with the Chief Health Officer for a follow-up." (Doc. 1-1 at 2).  As of the

3

date Plaintiff filed his complaint, the follow-up exam had not happened (Doc. 38 at ¶ 4).[2]

On August 17, 2012, Plaintiff appealed the response to grievance # 1207-510-041, noting that he had not yet had an appointment with the Chief Health Officer and that he was experiencing pain in his hip, knee, and back, and was losing his balance often (Doc. 1-1 at 14).  On October 4, 2012, Plaintiff received a response to the appeal. Id. at 15.  The response noted that "[t]he institutional staff advised that you need to be fitted for boots before they are ordered and the date of the fitting is pending." Id.  Plaintiff was encouraged to cooperate with the health care staff by following the treatment regimen prescribed and was advised that sick call was available to address his concerns should he experience problems. Id.

On or about August 16, 2012, Plaintiff filed an informal grievance stating that he was "experiencing pain in [his] back and legs." (Doc. 38 at ¶ 5).  Defendant Wagner replied to Plaintiff's

---

[2] Plaintiff's original complaint was signed on November 28, 2012 (Doc. 1).  At the time he filed the complaint, Plaintiff was no longer incarcerated at Charlotte Correctional Institution, and the Court has been informed by Population Management at the Florida Department of Corrections that Plaintiff was transferred from Charlotte Correctional Institution on October 3, 2012.  The Court takes judicial notice of the date of Plaintiff's transfer under Rule 201 of the Federal Rules of Evidence. Fed. R. Evid. 201(b)(1)(2) (a court may judicially notice a fact if it "can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned[.]").

grievance and told him that his orthopedic boots were in non-compliance with Charlotte Correctional Institution's security policies. <u>Id.</u>  On or about August 21, 2012, Plaintiff filed an appeal to the warden's office in which he objected to the response that had informed Plaintiff that his particular Dr. Comfort boots were a security concern (Doc. 1-1 at 5).  Plaintiff argued that his medical boots and heel lift had been issued by an orthopedic specialist and authorized by a doctor. <u>Id.</u>  Plaintiff further explained that Defendant Wagner's response to his informal grievance was erroneous because Charlotte Correctional Institution did not have the power to make its own rules.  Plaintiff quoted the Department of Corrections Manual, stating that "security and other operations of the institution will not dictate practices and contradict or otherwise compromise decisions that are in the sole province of a licensed clinician." <u>Id.</u>  Defendants Licata and Severson returned the grievance without action because it was not in compliance with the rules for filing grievances. <u>Id.</u> at 7.

In mid-August, Plaintiff approached Defendant Severson and asked why his requests for his Dr. Comfort boots were being met with resistance (Doc. 38 at ¶ 7).  Defendant Severson stated that "somebody doesn't want you to have them." <u>Id.</u>

On or about August 21, 2012, Plaintiff filed an Emergency Grievance (#1208-510-111) in which he explained that Charlotte Correctional Institution did not have the authority to promulgate

a rule against his Dr. Comfort brand orthopedic boots (Doc. 1-1 at 11-12). Plaintiff recognized that his boots were being withheld due to Colonel Snider's security concerns, but disagreed that the concerns were warranted. Id. at 11. Plaintiff argued that he had seen "tens" of inmates bludgeoned and stabbed or commit self-harm with items that were permissible. Id. Plaintiff also noted that he had been hospitalized three times "due to the use of permissible paper clips." Id. at 12. Defendant Severson and Assistant Warden Thomas Reid responded to Plaintiff's grievance and noted that it did not constitute an emergency. Id. at 13. Plaintiff was advised to file an informal grievance with security because "[t]hey are responsible for the area of your complaint." Id.

On August 21, 2012, Plaintiff lost his balance while walking up the stairs and the resulting fall required derma-bond to close the wound (Doc. 38 at ¶ 8). On August 31, 2012, Plaintiff fell into a fence. The resulting wound caused bruising and required stitches. Id. at ¶ 9. Plaintiff asserts that he suffered constant pain while incarcerated at Charlotte Correctional Institution due to the deprivation of his Dr. Comfort boots. Id. at ¶ 10.

On August 23, 2012, Plaintiff filed an Inmate Request Form on which he notified the Warden that he intended to file a lawsuit alleging gross deliberate indifference to his medical needs (Doc. 1-1 at 16). In response, it was noted that Plaintiff's request

had been reviewed, but the issue had been previously addressed and that Plaintiff should proceed to the formal grievance level. Id.

On or about September 10, 2013, Plaintiff appealed the denial of emergency grievance #1208-510-111, but the appeal was determined to be in non-compliance with the inmate grievance procedure because the grievance at the institutional level had been in non-compliance with the grievance rules (Doc. 1-1 at 10). On September 12, 2012, Plaintiff's request for an administrative appeal was returned without action. Id.

While incarcerated at Charlotte Correctional Institution, Plaintiff noticed three other inmates wearing the same brand of orthopedic boots that the defendants would not allow him to possess (Doc. 38 at ¶ 11).

Plaintiff asserts that the defendants violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs when they refused to immediately provide him with the medically prescribed Dr. Comfort orthopedic boots (Doc. 38 at 5). He seeks compensatory damages of $50,000 against each defendant and punitive damages of $25,000 against each defendant. Id. at 8, 10.

## II.  **Legal Standards**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372

F.3d 1250, 1262-63 (11th Cir. 2004).  Further, this Court favors
the plaintiff with all reasonable inferences from the allegations
in the complaint. Stephens v. Dep't of Health & Human Servs., 901
F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the
facts stated in [the] complaint and all reasonable inferences
therefrom are taken as true.").   However, the Supreme Court
explains that:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed
> factual allegations, a plaintiff's obligation
> to provide the grounds of his entitlement to
> relief requires more than labels and
> conclusions, and a formulaic recitation of the
> elements of a cause of action will not do.
> Factual allegations must be enough to raise a
> right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
citations and quotation marks omitted).  Further, courts are not
"bound to accept as true a legal conclusion couched as a factual
allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  In the
case of a *pro se* action, the Court should construe the complaint
more liberally than it would pleadings drafted by lawyers. Hughes
v. Rowe, 449 U.S. 5, 9 (1980).

   In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court,
referring to its earlier decision in Bell Atlantic Corp. v.
Twombly, illustrated a two-pronged approach to motions to dismiss.
First, a reviewing court must determine whether a Plaintiff's
allegation is merely an unsupported legal conclusion that is not

8

entitled to an assumption of truth.  Next, the court must determine whether the complaint's factual allegations state a claim for relief that is plausible on its face.  Iqbal, 556 U.S. at 679.

### III.    Analysis

To state a claim under § 1983, a plaintiff must allege that: (1) a violation of a specific constitutional right or federal statutory provision; (2) was committed by a person acting under color of state law.  Doe v. Sch. Bd. of Broward County, Fla., 604 F.3d 1248, 1265 (11th Cir. 2010).  Construing Plaintiff's claims in a liberal fashion, the Court determines that he seeks damages from Defendants Wagner, Licata, and Severson because his Eighth Amendment rights were violated by the defendants' deliberate indifference to his serious medical needs when they refused to allow him to have the Dr. Comfort brand orthopedic boots that had been given to him at Dade County Correctional Institution.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a plaintiff's health or safety. Estelle v. Gamble, 429 U.S. 97, 97 (1976).  To state a claim of deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).

> ### a. Plaintiff has alleged sufficient facts to support a conclusion that he suffers from a serious medical need

Defendants assert that Plaintiff has not alleged sufficient facts to demonstrate an objectively serious medical need (Doc. 41 at 5). The seriousness of a medical need is an objective inquiry. Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (internal citations and quotation marks omitted).

Plaintiff does not elaborate on the nature of his serious medical need other than to assert that one of his legs is shorter than the other. Plaintiff argues that because a specialist determined that he was in need of a heel lift and orthopedic boots, his condition automatically qualifies as a serious medical need (Doc. 43 at 3). Plaintiff provides no support for his assertion that a leg length discrepancy is *automatically* a serious medical need when such has been diagnosed by a specialist and does not explain how the delay in treatment posed a "substantial risk of serious harm." Mann, 588 F.3d at 1307.

Generally, other district courts addressing a leg length discrepancy have concluded that such a condition does *not* constitute an objectively serious medical need. See, e.g., Haverty v. Crosby, No. 1:05-cv-133-MO-EMT, 2006 WL 839157, at *5 (N.D. Fla. Mar. 28, 2006) (3/4 of an inch disparity in the length of the plaintiff's legs did not rise to the level of a serious medical need); Turner v. Solorzano, No. 3:04-cv-632-J-32MMH, 2006 WL 2523410, at *3 (M.D. Fla. Aug. 30, 2006)(3/8 inch disparity in leg length was not objectively serous medical need); Graham v. Aponte, No. 1:08-cv-308, 2009 WL 249779, at *4 (E.D. Va. Feb. 2, 2009) ("[T]he discrepancy in the length of plaintiff's legs which requires a 3/8-inch lift in one shoe is not a sufficiently serious medical need or condition to satisfy the objective component of an Eighth Amendment claim."); Shakur v. Furey, No. 3:08-cv-1187 (VLB), 2010 WL 1416836, at *4 (D. Conn. Apr. 8, 2010) (plaintiff failed to show through case law or medical opinion that a 3/8-inch leg length difference constituted a serious medical need); Dean v. Lantz, No. 3:08cv0749, 2009 WL 2151173, at *4 (D. Conn. July 17, 2009) (leg length discrepancy not a serious medical condition).

However, with the exception of Haverty, each of these cases was decided at the summary judgment stage, and the district court was presented with medical evidence regarding the plaintiff's condition.  While a leg length disparity is clearly not always a serious medical need, the Court notes that Petitioner was treated

11

for the discrepancy and was prescribed shoes for the condition. At
this stage of the litigation, Plaintiff need only allege factual
allegations that allow the Court to draw a reasonable inference
that he suffered from a serious medical need. See Iqbal, 556 U.S.
at 679.  Based on this, the Court concludes that Plaintiff has
alleged sufficient plausible facts to infer that he suffers from
an objectively serious medical need. See, e.g., Bismark v. Lang,
Case No. 2:02-cv-556-FtM-29SPC, 2006 WL 1119189, at *15 (M.D. Fla.
April 26, 2006) (recognizing that while the plaintiff's foot
conditions of hammer toes and high arches were not the type of
ailments that always constituted a serious medical condition, the
plaintiff had sufficiently proven a serious medical condition in
his particular situation).

**b.   *Plaintiff has not alleged facts showing that
any defendant was deliberately indifferent to
his health or safety***

Even though this Court concludes for the purpose of this
Opinion and Order that Plaintiff has alleged sufficient facts to
show that his leg length discrepancy is an objectively serious
medical need, the next step requires a consideration of the
subjective component: whether the defendants were deliberately
indifferent to that serious medical need.  The Supreme Court has
cautioned that not every allegation of inadequate medical
treatment states a constitutional violation. Estelle v. Gamble,
429 U.S. 97, 105, 106 (1976). "[I]n the medical context, an

inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 106-07.   Only acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need can offend "evolving standards of decency" in violation of the Eighth Amendment. Id.   In order to prove that a defendant acted with deliberate indifference, a plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

Petitioner argues that, because of the numerous grievances he filed, all the defendants were aware that Plaintiff faced a risk of serious harm if he did not get his Dr. Comfort boots back. However, contrary to Plaintiff's assertions, his medical concerns were not ignored.   Plaintiff was advised as early as July 17, 2012 that he had been evaluated at the prosthetics lab and that he had an appointment scheduled with the Chief Medical Officer for a follow-up (Doc. 1-1 at 3).   In an October 4, 2014 response to Plaintiff's request for an administrative remedy, he was informed that it was the duty of the Chief Health Officer "to determine the appropriate treatment regimen for the condition" he experienced, "including passes, specialty consults, and special shoes." (Doc. 1-1 at 15).   Plaintiff was told that he needed to be fitted for

13

boots and that the date of the fitting was pending. Id. Plaintiff was advised to cooperate with health care staff and that sick call was available if he experienced any problems. Id. Although Plaintiff now asserts that no follow-up appointment occurred, it appears that the cause of the missed appointment was Plaintiff's transfer to another facility, not the Defendants' deliberate indifference to Plaintiff's medical concerns. Plaintiff was transferred from Charlotte Correctional Institution on October 3, 2012, prior to the October 4, 2012 response and, presumably, prior to the scheduled fitting.

A prisoner is not entitled to the treatment of his choice. That Plaintiff would have preferred the Dr. Comfort boots he received at Dade Correctional Institution over being fitted for another type of orthopedic shoe or heel lift, is merely a disagreement with the medical care he received while incarcerated at Charlotte. Where, as here, a § 1983 plaintiff received medical treatment and care but alleges that he should have received different treatment or care, the conduct does not constitute deliberate indifference. See Hamm v. Dekalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical

treatment, it does not guarantee to a prisoner the treatment of his choice.").

To the extent Plaintiff argues that the defendants exhibited deliberate indifference because they did not *immediately* return his Dr. Comfort boots upon request or provide a replacement pair, the allegations in his amended complaint still do not entitle him to relief.  Where the prisoner has suffered increased physical injury due to the delay in treatment, a court must consider three factors to determine whether the plaintiff has sufficiently alleged a claim of deliberate indifference: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

First, there is no indication that Plaintiff sustained serious injury as a result of the delay in the return of his boots. However, even liberally construing Plaintiff's allegation that he suffered serious injury as a result of clumsiness and falls caused by having to function in the absence of his Dr. Comfort boots, Plaintiff cannot show that his underlying condition (the leg length discrepancy) was worsened by the delay.

Next, Plaintiff's amended complaint and the grievances referenced therein indicate that the defendants' security concerns prompted the confiscation of Plaintiff's boots.  Plaintiff asserts that Defendant Wagner answered an informal grievance in which she

explained to Plaintiff that his Dr. Comfort boots were not in compliance with security at Charlotte Correctional Institution (Doc. 38 at 6). Plaintiff attempts to attribute liability to Defendant Wagner by stating that she instructed Property Officer Caberlero not to give Plaintiff his Dr. Comfort boots even though she was aware that he had a medical need for the boots (Doc. 38 at 6). However, it is evident from Plaintiff's grievances that due to security concerns, Colonel Snider, not Defendant Wagner, was responsible for the security policy that prohibited Plaintiff from possessing his Dr. Comfort boots (Doc. 1-1 at 11-12). Plaintiff argues that, notwithstanding Colonel Snider's directive, nobody at the Charlotte County Jail had the authority to withhold his boots, and that other prisoners were allowed to possess Dr. Comfort brand boots (Doc. 39 at ¶ 11). Plaintiff further argues that the defendants' security concerns violated his "clearly established Eighth Amendment right to be free from interference with medical treatment once prescribed." (Doc. 38 at 6).

Despite Plaintiff's assertions to the contrary, prison officials may restrict a prisoner's constitutionally and legally protected freedoms for legitimate penological reasons such as safety and security. Procunier v. Martinez, 416 U.S. 396, 407-11 (1974); Turner v. Safley, 482 U.S. 78, 89-90 (1987). The evaluation of penological objectives is "committed to the considered judgment of prison administrators, 'who are actually

16

charged with and trained in the running of the *particular* institution under examination.'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (emphasis added).

Colonel Snider's concern that Plaintiff's Dr. Comfort boots could cause a security issue at Charlotte Correctional Institution was based on legitimate penological interests. See, e.g., Simuel v. Lee, No. 5:03-CT-350-F(3), 2006 WL 4847431, at *6 (E.D.N.C. Dec. 15, 2006)(penological objective achieved by confiscating plaintiff's work boots is legitimate); Walker v. Fischer, No. 9:08-cv-1078, 2011 WL 4369116 (N.D.N.Y. July 25, 2011)(prison's security staff had legitimate penological interests for refusing Plaintiff's request to keep his medical boots in his cell). Courts generally defer to prison officials in matters regarding practices that are needed to preserve internal discipline and institutional security. Further, the Court recognizes that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547-48 (1979). That other prisoners were allowed to possess Dr. Comfort boots at Charlotte Correctional Institution does not invalidate any defendant's security concerns regarding Plaintiff's possession of similar boots, particularly in light of Plaintiff's admission that he had been hospitalized three times because of his misuse of

17

paper clips (Doc. 1-1 at 12); see Shaw v. Murphy, 532 U.S. 223, 229 (2001) (explaining that courts are particularly ill equipped' to deal with problems of prisons and, therefore, generally defer to the judgments of prison officials in upholding regulations against constitutional challenges).

The defendants' security concerns are no less valid merely because they may have interfered with Plaintiff's medical treatment as long as his medical needs were not ignored. See, e.g., Rix v. McClure, Case No. 10-cv-1224, 2012wl1183435 (D. Kan. 2012) (Defendants' concern that Plaintiff could use his cane as a weapon was a legitimate security concern); Rodriguez v. Kincheloe, 763 F. Supp. 463, 470 (E.D. Wash. 1991) (confiscation of Ace bandage from prisoner with prior history of suicide attempt was legitimately related to prison security concerns); Wood v. Idaho Dept. of Corr., 391 F. Supp. 2d 852 (D. Idaho 2005)(security a legitimate penological reason to deny an inmate the sunglasses of his choice). As discussed, Plaintiff's medical needs were not ignored; he was scheduled to be fitted for different orthopedic shoes to address his leg length discrepancy.  In addition, Plaintiff was instructed to contact sick call if he had further health concerns regarding his condition (Doc. 1-1 at 15).

Even if, as Plaintiff asserts, the defendants were mistaken in their assertions that Dr. Comfort boots were not allowed at Charlotte Correctional Institution or that Plaintiff's possession

of such would have caused a security concern, such a mistake
demonstrates mere negligence which is not cognizable in a § 1983
complaint. Estelle, 429 U.S. at 106 (recognizing that deliberate
indifference entails more than mere negligence).

### c. Plaintiff has not alleged facts to show a causal connection between any defendant and his constitutional harm

The final requirement for a deliberate indifference claim is
that a defendant have a causal connection to the constitutional
harm. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).
Causation, of course, can be shown by personal participation in
the constitutional violation. Zatler v. Wainwright, 802 F.2d 397,
401 (11th Cir. 1986).

Plaintiff attempts to attribute liability to Defendants
Licata and Severson on the basis that he addressed grievance forms
to these defendants in which he complained that Property Officer
Caberlero would not give him his orthopedic boots. Plaintiff's
claims against Defendants Licata and Severson are predicated upon
their handling of his grievances. Specifically, Plaintiff asserts
that these defendants engaged in "obstructionist tactics" because
they returned his grievances without action, even though the
grievances were in "compliance with the grievance procedure."
(Doc. 38 at 7). The amended complaint contains no other facts or
allegations pertaining to these defendants' involvement in the
alleged constitutional deprivations other than allegations that

19

Defendant Severson knew of his leg length discrepancy because he had been instrumental in getting Plaintiff his Dr. Comfort boots at Dade Correctional Institution (Doc. 38 at 6). This is insufficient to show a causal relationship between these defendants' actions and the alleged constitutional deprivation. Likewise, Plaintiff cannot show how Defendant Wagner caused a violation of his constitutional rights merely by adhering to Charlotte Correctional Institution's security policies.

In addition, Plaintiff's assertion that his prison grievances were not handled properly by prison officials, even if true, fails to state a stand-alone § 1983 claim. The Eleventh Circuit Court of Appeals has held: "We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006); Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir.2005); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Therefore, a prison official's failure to timely process a grievance form,

investigate it, or otherwise respond to a grievance is not actionable under § 1983.

In this case, Plaintiff merely alleges that Defendants Licata and Severson deprived him of his rights because they denied his grievance based on what Plaintiff apparently believe to be a fabricated reason.[3] Specifically, Plaintiff asserts that Defendants Severson and Licata improperly intercepted his medical grievance in order to return it without action (Doc. 38 at 7). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993).

---

[3] Plaintiff attached to his original complaint a response from these defendants in which they explained:

> Your request for administrative appeal has been received in non-compliance. This office has previously addressed this issue in appeal log #1207-510-041. We will not redress this issue or your allegations, in accordance with Chapter 33-103.014(1)(n), there is no provision in the grievance process to appeal a decision already rendered by this office. Your request for administrative appeal is RETURNED WITHOUT ACTION.

(Doc. 1-1 at 7). Plaintiff appears to now argue that his appeal was compliant with Florida Code and should have been addressed. In addition to not being cognizable under § 1983, Plaintiff's claim that these defendants obstructed his access to the appeal of his grievances is refuted by the Department of Corrections' response to Plaintiff's grievance in which he was informed that he had a pending appointment to be fitted for new boots. Id. at 15.

## IV.   Conclusion

Construing all allegations in the amended complaint in Plaintiff's favor, he has failed to state a claim that any defendant acted with deliberate indifference by refusing to allow him to possess the orthopedic boots that had been prescribed for him at another correctional facility.  Because all claims against these defendants are dismissed, the Court will not address Defendants' argument that they are also entitled to qualified immunity.

Accordingly, it is now **ORDERED:**

1.   The Motion to Dismiss filed by Defendants Licata, Wagner, and Severson (Doc. 41) is **GRANTED.**  All claims against these defendants in their individual capacity are dismissed for failure to state a claim upon which relief may be granted;

2.   In this Court's prior order of dismissal, all claims for monetary damages against the defendants in their official capacities were dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) because these defendants are immune from suit for monetary damages in their official capacities (Doc. 34 at 12).  To the extent Plaintiff intended to re-raise official capacity claims in the instant complaint, the claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and

3.    With no remaining claims or defendants, the **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida, this __19th__ day of May, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA:  OrlP-4
Copies: Nail A. Harry
Counsel of Record